HANSON BRIDGETT LLP
NEAL L. WOLF, SBN 202129
nwolf@hansonbridgett.com
ANTHONY J. DUTRA, SBN 277706
adutra@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366

*Proposed Attorneys for Debtor
and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re | Case No. |
| GALILEO LEARNING, LLC[1], | Chapter 11 |
| Debtor. | **MOTION OF DEBTOR GALILEO LEARNING, LLC FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING FINAL HEARING** |
| | Date:<br>Time:<br>Crtrm.: |

---

[1] The last four digits of the Debtor's federal tax identification number are 9453. The mailing address for the Debtor is 1021 3rd Street, Oakland, California 94607.

16516536.2

Galileo Learning, LLC ("**Galileo**"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Case**"), respectfully requests that the Court enter an interim order, in the form attached as **<u>Exhibit A</u>** hereto (the "**Interim Order**") and a final order, in the form attached as **<u>Exhibit B</u>** hereto (the "**Final Order**"), pursuant to sections 361, 363, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") (i) authorizing the use of cash collateral on an interim and final basis, (ii) granting adequate protection, and (iii) scheduling a final hearing. The Debtor is entitled to the requested relief because the entity that has a putative security interest in the Debtor's deposit accounts, the United States Small Business Administration (the "**SBA**") has the benefit of an "equity cushion" that is more than *twenty times greater* than the amount of the loan itself.

16516536.2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this motion (the "**Motion**") pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**").

2.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested herein are sections 361, 363, 1107 and 1108 of the Bankruptcy Code.

4.  The Debtor consents to the entry by the Court of a final order with respect to this Motion.

### II.  BACKGROUND

5.  On May 6, 2020 (the "**Petition Date**"), the Debtor commenced the Case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.

6.  The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.  No official committee of unsecured creditors has yet been appointed in the Case.

8.  Some factual background relating to the Debtor and the events leading to the commencement of the Case is set forth in greater detail in the *Declaration of Glen E. Tripp in Support of "First Day Motions"* (the "**Tripp Declaration**") filed contemporaneously with this Motion and incorporated herein by reference.

9.  On or about April 21, 2020, Galileo obtained a $500,000 "Secured Disaster Loan" ("**SDL**") from the SBA.  The loan bears an annual interest rate of 3.75% and is payable in three hundred forty-eight (348) equal monthly installments of principal and ///

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

Case: 20-40857  Doc# 10  Filed: 05/06/20  Entered: 05/06/20 07:05:51  Page 3 of 22

1  interest to be paid over a thirty (30) year period, with payments to commence one year

2  from the date of the Promissory Note, on April 21, 2021.

3       10.    The SDL is secured under a "Security Agreement," which provides for a

4  pledge of, among other described collateral, "… all tangible and intangible personal

5  property ("**Collateral**"), including, but not limited to: … (h) deposit accounts…"

6       11.    To date, to the best of Galileo's knowledge, after due and proper inquiry

7  and investigation on the part of Galileo (including two UCC searches), the SBA has taken

8  no steps to perfect its security interest in the Debtor's deposit accounts.  The SBA has

9  not requested that Galileo or its bank, the California Bank of Commerce, enter into a

10  deposit account control agreement ("**DACA**").  Moreover, the SBA has filed no Uniform

11  Commercial Code financing statements for the purpose of perfecting its security interest.

12       12.    Galileo currently holds the aggregate amount of approximately $6,244,000

13  in its various deposit accounts, *including* certain restricted funds obtained through an

14  April 13, 2020, $2,539,805 Paycheck Protection Plan loan ("**PPP Loan**") administered by

15  the SBA and implemented through the Coronavirus Aid, Relief, and Economic Security

16  Act (the "**CARES Act**").  The PPP Loan, which was funded by the California Bank of

17  Commerce, is *unsecured* and, if certain conditions are met, wholly or partially forgivable.

18       13.    It is highly unlikely that Galileo's aggregate cash deposit account balances

19  will drop below the $500,000 level within the next six (6) months.

20       14.    Moreover, the total value of the SBA's Collateral (if one takes into account

21  "enterprise value" and includes the value of such tangible and intangible assets as cash,

22  accounts receivable, prepaids, inventory, trade secrets, curriculum, and customer lists) is

23  greater than $10,000,000, which provides the SBA with an "equity cushion" of greater

24  than $9,500,000 with respect to its $500,000 loan.  *In short, the value of the Collateral is*

25  *at a minimum, fifteen (15) to  twenty (20) times greater than the SDL.*

26       15.    If the Debtor is shut down for even a short time because it is denied the use

27  of cash collateral, many of its employees (who depend upon their paychecks to support

28  themselves and their families) will depart, some or all of its proposed bankruptcy

Case: 20-40857    Doc# 10    Filed: 05/08/20    Entered: 05/08/20 07:06:51    Page 4 of 22

1  professionals will cease working on the case, it will be unable to purchase necessary
2  goods and services, and the Debtors' reorganization effort will be seriously jeopardized, if
3  not permanently shut down.

**III.    RELIEF REQUESTED**

5        16.    By this Motion, the Debtor requests that this Court enter an order pursuant
6  to sections 361 and 363 of the Bankruptcy Code (i) authorizing the use of cash collateral
7  on an interim and final basis, (ii) granting adequate protection in the form of replacement
8  liens (but only to extent that the SBA's purported existing liens are currently perfected),
9  and (iii) scheduling a final hearing on the Motion.

**IV.    LEGAL ARGUMENT**

11       17.    Under section 363(c)(2) of the Bankruptcy Code, a debtor in possession
12 may not use cash collateral unless (a) each entity that has an interest in such collateral
13 consents; or (b) the court, after notice and a hearing, authorizes such use, sale or lease
14 in accordance with the provisions of this section. 11 U.S.C. §363(c)(2).

15       18.    In the case at bar, the Court should allow the use of cash collateral because
16 the interest of the SBA are adequately protected.

17       19.    Section 361 of the Bankruptcy Code provides a *non-exclusive* list of ways to
18 provide adequate protection, including periodic cash payments, the grant of liens on new
19 collateral, and replacement liens. 11 U.S.C. §361. What constitutes adequate protection
20 must be decided on a case by case basis. *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.
21 1987). The focus of the adequate protection requirement is to protect a secured creditor
22 from diminution in the value of its interest in the collateral during the period of use. *In re
23 Swedeland Dev. Group, Inc.,* 16 F.3d 552, 564 (3rd Cir. 1994).

24       20.    The Debtor submits that the proposed adequate protection to be provided
25 to the SBA, specifically, the granting of replacement liens in all of the Debtor's post-
26 petition assets *to the extent that the SBA's prepetition liens were duly and properly
27 perfected*, is sufficient under the particular circumstances of this Case.

28 ///

21.     Courts have found a secured creditor adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor, or the level of the secured creditor's collateral is not decreasing over time. *See*, e.g., *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984) ("Although the existence of an equity cushion as a method of adequate protection is not specifically mentioned in § 361, it is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court."); *In re Phoenix Steel Corp.*, 39 B.R. 218, 224 (D. Del. 1984) ("It is clear that if a sufficient equity cushion exists, [a creditor's] security would not be impaired and they would be adequately protected."); *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D. N.H. 1993) (finding that secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining).

22.     Furthermore, case law indicates an equity cushion of 20% or more is independently sufficient to provide adequate protection. *See*, e.g., *In re C.B.G. Ltd.,* 150 B.R. 570, 573 (Bankr. M.D. Pa. 1992) (noting that an equity cushion of 20% or more constitutes adequate protection, less than 11% is insufficient, and a range of 12% to 20% has divided courts).

23.     In the case at bar, the SBA has an equity cushion that is *fifteen (15) to twenty (20) times greater than the amount of the loan*.  This remarkable fact, alone, justifies the use of cash collateral.  Moreover, the Debtor currently has approximately $7,000,000 in cash in its bank accounts.  As reported above, it is highly unlikely that Galileo's aggregate cash deposit account balances will drop below the $500,000 level within the next six (6) months.  Finally, the SBA has not even acted to perfect its lien in the Debtor's deposit accounts.

## V.     INTERIM APPROVAL AND SCHEDULING A FINAL HEARING

24.     In order to avoid immediate and irreparable harm and prejudice to the Debtor, its estate and all parties in interest, the Debtor requests that the Court authorize the Debtor to use cash collateral on an interim basis and schedule a hearing to consider entry of a final order.

16516536.2

Case: 20-40857    Doc# 10    Filed: 03/08/20    Entered: 03/08/20 15:07:05    Page 6 of 22

## VI.   NOTICE

25.    The Debtor will serve notice of this Motion upon:  (i) the Office of the United States Trustee; (ii) the Debtor's list of creditors holding the thirty (30) largest unsecured claims; (iii)  the Internal Revenue Service; (iv) the United States Attorney's Office for the Northern District of California; (v) the Small Business Administration; and (vi) all parties who have formally appeared in this Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtor submits that no other or further notice is necessary.

No prior motion for the relief requested herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court enter an interim order, in the form attached hereto as **Exhibit A** and a final order, in the form attached hereto as **Exhibit B**: (i) authorizing the use of cash collateral on an interim basis; (ii) granting adequate protection; (iii) scheduling a final hearing; and (iv) granting the Debtor such other and further relief as is just and proper under the circumstances.

DATED:  May 6, 2020                          Respectfully submitted,

HANSON BRIDGETT LLP

By:      */s/ Neal L. Wolf*
         NEAL L. WOLF
         ANTHONY J. DUTRA

         *Proposed Attorneys for Debtor*
         *and Debtor in Possession*

16516536.2

Case: 20-40857   Doc# 10   Filed: 05/06/20   Entered: 05/06/20 15:51   Page 7 of 22

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

HANSON BRIDGETT LLP
NEAL L. WOLF, SBN 202129
nwolf@hansonbridgett.com
ANTHONY J. DUTRA, SBN 277706
adutra@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 777-3200
Facsimile:    (415) 541-9366

Proposed Attorneys for Debtor
GALILEO LEARNING, LLC, a California
Limited Liability Company

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re | Case No. |
| GALILEO LEARNING, LLC[1], a California Limited Liability Company, | Chapter 11 |
| Debtor. | **INTERIM ORDER (A) AUTHORIZING POST-PETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B), AND (D) GRANTING RELATED RELIEF** |

[1] The last four digits of the Debtor's federal tax identification number are 9453. The mailing address for the Debtor is 1021 3rd Street, Oakland, California 94607.

INTERIM ORDER AUTHORIZING POST-PETITION USE OF CASH COLLATERAL

16521848.1

The above captioned Debtor having filed the ("**Motion**") for entry of an interim order (the "**Interim Order**") and final order (the "**Final Order**") pursuant to section 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"); and the Court having considered the Motion, the *Declaration of Glen E. Tripp in Support of Debtor's "First Day Motions"* and the evidence submitted at the interim hearing held before the Court on May ___, 2020 (the "**Interim Hearing**") to consider entry of the Interim Order; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtor, its creditors and its estate pending the Final Hearing; and is essential for the continued operation of Debtor's business, and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

A. On May 6, 2020 (the "**Petition Date**"), Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code commencing this case (the "**Chapter 11 Case**"). The Debtor is in possession of its property and continues to operate and manage its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.  As of the date hereof, no official committee of unsecured creditors (together with any other statutory committee, a "**Committee**") has been appointed in the Chapter 11 Case.

B. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). The Court further finds that this proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2) and the Court may enter a final order hereon consistent with

16521848.1

Article III of the U.S. Constitution. The Court further finds that venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

C. The statutory bases for the relief requested herein are sections 105(a), 361, 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**").

D. Notice of the Interim Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) the creditors holding the twenty (20) largest unsecured claims against the Debtor; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the Northern District of California; (v) all other parties entitled to notice; and (vi) the United States Small Business Administration ("**SBA**"). Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion is sufficient and no other or further notice need be provided.

E. The Debtor has a pressing need for the immediate use of Cash Collateral (as defined below) to continue operating as a going concern (including funding its day-to-day operations which includes payroll, vendors, and the costs of this Chapter 11 Case), minimize disruption, rebut any skepticism regarding the Debtor's ability to operate as a going-concern and stabilize business operations in response to this Chapter 11 Case. In the absence of the immediate use of the Cash Collateral, serious and irreparable harm to the Debtor and its estate will occur and impair the Debtor's efforts to reorganize.

F. On or about April 21, 2020, Galileo obtained a $500,000 "Secured Disaster Loan" ("**SDL**") from the SBA. The loan bears an annual interest rate of 3.75% and is payable in three hundred forty-eight (348) equal monthly installments of principal and interest to be paid over a thirty (30) year period, with payments to commence one year from the date of the Promissory Note, on April 21, 2021.

G. The SDL is secured under a "Security Agreement," which provides for a pledge of, among other described collateral, "… all tangible and intangible personal

property ("Collateral"), including, but not limited to: … (h) deposit accounts…"

H.     To date, to the best of Galileo's knowledge, after due and proper inquiry and investigation on the part of Galileo (including two UCC searches), the SBA has taken no steps to perfect its security interest in the Debtor's deposit accounts. The SBA has not requested that Galileo or its bank, the California Bank of Commerce, enter into a deposit account control agreement ("**DACA**"). Moreover, the SBA has filed no Uniform Commercial Code financing statements for the purpose of perfecting its security interest.

I.     Galileo currently holds the aggregate amount of approximately $6,244,000 in its various deposit accounts, including certain restricted funds obtained through an April 13, 2020, $2,539,805 Paycheck Protection Plan loan ("**PPP Loan**") administered by the SBA and implemented through the Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**"). The PPP Loan, which was funded by the California Bank of Commerce, is unsecured and, if certain conditions are met, wholly or partially forgivable.

J.     The Debtor believes that it is highly unlikely that Galileo's aggregate cash deposit account balances will drop below the $500,000 level within the next six (6) months.

K.     Moreover, the total value of the SBA's Collateral (if one takes into account "enterprise value" and includes the value of such tangible and intangible assets as cash, accounts receivable, prepaids, inventory, trade secrets, curriculum, and customer lists) is greater than $10,000,000, which provides the SBA with an "equity cushion" of greater than $9,500,000 with respect to its $500,000 loan. In short, the value of the Collateral is at a minimum, fifteen (15) to twenty (20) times greater than the SDL.

L.     While the SBA might otherwise be entitled to adequate protection of its interests in the Collateral and the proceeds thereof, in this Case, the SBA is protected by an extremely large equity cushion.

M.     Based on the record presented to the Court by the Debtor at the Interim Hearing, the terms of the use of Cash Collateral as set forth herein are fair and reasonable.

16521848.1

N.    The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(d). The permission granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Interim Order is in the best interest of the Debtor's estates and its creditors.

**IT IS THEREFORE ORDERED** that:

1.    The Motion is hereby **GRANTED**, on an interim basis, to the extent set forth in this Interim Order. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled. The rights of all parties in interest to object to the entry of a Final Order on the Motion are reserved.

2.    As adequate protection for the interest of the SBA, for, and solely to the extent of, any diminution in the value of the SBA's interest in the Collateral resulting from (i) the Debtor's use of Cash Collateral, (ii) the use, sale, or lease of the Collateral (other than Cash Collateral) pursuant to section 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, the SBA is hereby granted a continuing replacement security interest in, and lien (collectively, the "Replacement Liens"), which Replacement Liens shall have the same priority, validity, force, extent, status of perfection (if any), and effect as the liens that they replace, effective as of the Petition Date without the necessity of the SBA taking any further action, upon the right, title and interest in the following property of the Debtor:

        a.    All pre-petition Collateral of the SBA, including all proceeds, profits, rents, and products thereof; and

        b.    Property acquired by the Debtor after the Petition Date, which is of the same nature, kind, and character as the prepetition Collateral, and all proceeds, profits, rents, and products thereof.

3.    Nothing herein shall waive, impair, or preclude the right of the Debtor, or any other party in interest, to seek to avoid the liens of the SBA on the grounds that said

16521848.1

liens were not perfected in a due and proper manner, or on any other appropriate grounds.

4.      Debtor's ability to use Cash Collateral under this Interim Order shall terminate upon the entry of the Final Order or additional interim order regarding use of Cash Collateral.

5.      Notwithstanding Bankruptcy Rule 4001(a)(1), this Interim Order is not stayed and shall be effective upon the date of its entry on the docket.

6.      The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the performance of each and every right and obligation set forth in this Interim Order.

7.      The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Final Order.

8.      This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

9.      The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

10.     The Final Hearing will be held on _____, 2020 at _____ a.m./p.m. (PDST). The Debtor shall, on or before _____, 2020, mail copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order and a copy of the Motion, to the parties having been given notice of the Interim Hearing, to any party that has filed prior to such date a request for notices with this Court and to counsel for the Committee (if any) and any other statutory committee of unsecured creditors appointed pursuant to Bankruptcy Code section 1102, the Internal Revenue Service, all state taxing authorities in the states in which the Debtor has tax liability, any federal or state regulatory authorities governing the Debtor's industry, the U.S. Attorney's Office, the California and Illinois Attorneys General, counsel to the SBA, and all parties asserting liens against or security interest in, any of the collateral that is addressed in this Interim

16521848.1

1 Order. The notice of entry of this Interim Order shall state that any party in interest

2 objecting to the entry of the Final Order authorizing the use of Cash Collateral shall file

3 written objections with the United States Bankruptcy Court Clerk for the Northern District

4 of California no later than 4:00 p.m. (PDST) on _____, 2020, and objections shall be

5 served so that the same are received on or before such date to: (i) proposed counsel to

6 the Debtor: Hanson Bridgett LLP, 1676 N. California Blvd., Suite 620, Walnut Creek, CA

7 94596, Attn: Neal Wolf (nwolf@hansonbridgett.com), (ii) counsel to any statutory

8 committee appointed in these Chapter 11 Cases; and (iii) the U.S. Trustee,

9 _____, Attn:_____).

11 *** END OF ORDER***

INTERIM ORDER AUTHORIZING POST-PETITION USE OF CASH COLLATERAL

16521848.1

Case: 20-40857   Doc# 10   Filed: 05/06/20   Entered: 05/06/20 17:55:51   Page 16 of 22

1  HANSON BRIDGETT LLP
   NEAL L. WOLF, SBN 202129
2  nwolf@hansonbridgett.com
   ANTHONY J. DUTRA, SBN 277706
3  adutra@hansonbridgett.com
   425 Market Street, 26th Floor
4  San Francisco, California 94105
   Telephone:    (415) 777-3200
5  Facsimile:    (415) 541-9366

6  Proposed Attorneys for Debtor
   GALILEO LEARNING, LLC, a California
7  Limited Liability Company

8

9              UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                   OAKLAND DIVISION

12

13  In re                                    Case No.

14  GALILEO LEARNING, LLC[1], a California    Chapter 11
    Limited Liability Company,
15                                           **FINAL ORDER (A) AUTHORIZING
              Debtor.                        POST-PETITION USE OF CASH
16                                           COLLATERAL, (B) GRANTING
                                             ADEQUATE PROTECTION, (C)
17                                           SCHEDULING A FINAL HEARING
                                             PURSUANT TO BANKRUPTCY RULE
18                                           4001(B), AND (D) GRANTING RELATED
                                             RELIEF**
19

20

21

22

23

24

25

26

27  _____

28  [1] The last four digits of the Debtor's federal tax identification number are 9453. The
    mailing address for the Debtor is 1021 3rd Street, Oakland, California 94607.

FINAL ORDER AUTHORIZING POST-PETITION USE OF CASH COLLATERAL

16523049.1

The above captioned Debtor having filed the ("**Motion**") for entry of an interim order (the "**Interim Order**") and final order (the "**Final Order**") pursuant to section 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"); and the Court having considered the Motion, the *Declaration of Glen E. Tripp in Support of Debtor's "First Day Motions"* and the evidence submitted at the interim hearing held before the Court on May ___, 2020 (the "**Interim Hearing**") to consider entry of the Interim Order; and the Interim Order having been entered on May __, 2020; and notice of the final hearing ("**Final Hearing**") on the Motion having been given to all appropriate parties on a timely basis in accordance with the terms and conditions of the Interim Order; and a hearing on the Final Order having been conducted on _____; and the Court having considered the arguments of counsel and evidence presented at said Final Hearing; and, after due deliberation and consideration, the Court having determined that entry of the Final Order is otherwise fair and reasonable and in the best interests of the Debtor, its creditors and its estate; and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

A.  On May 6, 2020 (the "**Petition Date**"), Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code commencing this case (the "**Chapter 11 Case**"). The Debtor is in possession of its property and continues to operate and manage its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.  As of the date hereof, no official committee of unsecured creditors (together with any other statutory committee, a "**Committee**") has been appointed in the Chapter 11 Case.

B.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for

16523049.1

the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). The Court further finds that this proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2) and the Court may enter a final order hereon consistent with Article III of the U.S. Constitution. The Court further finds that venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.     The statutory bases for the relief requested herein are sections 105(a), 361, 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**").

      D.     Notice of the Final Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) the creditors holding the twenty (20) largest unsecured claims against the Debtor; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the Northern District of California; (v) all other parties entitled to notice; and (vi) the United States Small Business Administration ("**SBA**"). Under the circumstances, such notice of the Final Hearing and the relief requested in the Motion is sufficient and no other or further notice need be provided.

      E.     The Debtor has a pressing need for the immediate and continued use of Cash Collateral (as defined below) to continue operating as a going concern (including funding its day-to-day operations which includes payroll, vendors, and the costs of this Chapter 11 Case), minimize disruption, rebut any skepticism regarding the Debtor's ability to operate as a going-concern and stabilize business operations in response to this Chapter 11 Case. In the absence of the immediate use of the Cash Collateral, serious and irreparable harm to the Debtor and its estate will occur and impair the Debtor's efforts to reorganize.

      F.     On or about April 21, 2020, Galileo obtained a $500,000 "Secured Disaster Loan" ("**SDL**") from the SBA. The loan bears an annual interest rate of 3.75% and is payable in three hundred forty-eight (348) equal monthly installments of principal and interest to be paid over a thirty (30) year period, with payments to commence one year

3

FINAL ORDER AUTHORIZING POST-PETITION USE OF CASH COLLATERAL

16523049.1

from the date of the Promissory Note, on April 21, 2021.

G. The SDL is secured under a "Security Agreement," which provides for a pledge of, among other described collateral, "… all tangible and intangible personal property ("Collateral"), including, but not limited to: … (h) deposit accounts…"

H. To date, to the best of Galileo's knowledge, after due and proper inquiry and investigation on the part of Galileo (including two UCC searches), the SBA has taken no steps to perfect its security interest in the Debtor's deposit accounts. The SBA has not requested that Galileo or its bank, the California Bank of Commerce, enter into a deposit account control agreement ("**DACA**"). Moreover, the SBA has filed no Uniform Commercial Code financing statements for the purpose of perfecting its security interest.

I. Galileo currently holds the aggregate amount of approximately $6,244,000 in its various deposit accounts, including certain restricted funds obtained through an April 13, 2020, $2,539,805 Paycheck Protection Plan loan ("**PPP Loan**") administered by the SBA and implemented through the Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**"). The PPP Loan, which was funded by the California Bank of Commerce, is unsecured and, if certain conditions are met, wholly or partially forgivable.

J. The Debtor believes that it is highly unlikely that Galileo's aggregate cash deposit account balances will drop below the $500,000 level within the next six (6) months.

K. Moreover, the total value of the SBA's Collateral (if one takes into account "enterprise value" and includes the value of such tangible and intangible assets as cash, accounts receivable, prepaids, inventory, trade secrets, curriculum, and customer lists) is greater than $10,000,000, which provides the SBA with an "equity cushion" of greater than $9,500,000 with respect to its $500,000 loan. In short, the value of the Collateral is at a minimum, fifteen (15) to twenty (20) times greater than the SDL.

L. While the SBA might otherwise be entitled to adequate protection of its interests in the Collateral and the proceeds thereof, in this Case, the SBA is protected by an extremely large equity cushion.

FINAL ORDER AUTHORIZING POST-PETITION USE OF CASH COLLATERAL

M.    Based on the record presented to the Court by the Debtor at the Interim Hearing and the Final Hearing, the terms of the use of Cash Collateral as set forth herein are fair and reasonable.

N.    The Court concludes that entry of this Final Order is in the best interest of the Debtor's estates and its creditors.

**IT IS THEREFORE ORDERED** that:

1.    The Motion is hereby **GRANTED**, on a final basis.  Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.    As adequate protection for the interest of the SBA, for, and solely to the extent of, any diminution in the value of the SBA's interest in the Collateral resulting from (i) the Debtor's use of Cash Collateral, (ii) the use, sale, or lease of the Collateral (other than Cash Collateral) pursuant to section 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, the SBA is hereby granted a continuing replacement security interest in, and lien (collectively, the "Replacement Liens"), which Replacement Liens shall have the same priority, validity, force, extent, status of perfection (if any), and effect as the liens that they replace, effective as of the Petition Date without the necessity of the SBA taking any further action, upon the right, title and interest in the following property of the Debtor:

a.    All pre-petition Collateral of the SBA, including all proceeds, profits, rents, and products thereof; and

b.    Property acquired by the Debtor after the Petition Date, which is of the same nature, kind, and character as the prepetition Collateral, and all proceeds, profits, rents, and products thereof.

3.    Nothing in this Final Order shall impair or restrict any right on the part of the Debtor, or any other party in interest, to challenge or seek to avoid the purported lien of the SBA on the grounds that said lien has not been duly or properly perfected, or on any

Case: 20-40857    Doc# 10    Filed: 05/06/20    Entered: 05/06/20 17:55:51    Page 21 of
22

FINAL ORDER AUTHORIZING POST-PETITION USE OF CASH COLLATERAL

16523049.1

other grounds.

4.     Notwithstanding Bankruptcy Rules 4001(a)(1) and 6004(h), to the extent applicable, this Final Order is not stayed and shall be effective upon the date of its entry on the docket.

5.     The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the performance of each and every right and obligation set forth in this Final Order.

6.     The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Final Order.

7.     This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

8.     The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

*** END OF ORDER***

16523049.1

Case: 20-40857    Doc# 10    Filed: 05/06/20    Entered: 05/06/20 17:55:51    Page 22 of
22
FINAL ORDER AUTHORIZING POST-PETITION USE OF CASH COLLATERAL
6