HANSON BRIDGETT LLP
NEAL L. WOLF, SBN 202129
nwolf@hansonbridgett.com
ANTHONY J. DUTRA, SBN 277706
adutra@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 777-3200
Facsimile:    (415) 541-9366

Proposed Attorneys for Debtor
GALILEO LEARNING, LLC, a California
Limited Liability Company

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re | Case No. |
| GALILEO LEARNING, LLC[1], a California Limited Liability Company, | Chapter 11 |
| Debtor. | **DECLARATION OF GLEN E. TRIPP IN SUPPORT OF "FIRST DAY MOTIONS"** |

I, Glen E. Tripp, hereby declare as follows:

1.    I am an adult and am competent to make this Declaration.

2.    I am the founder, chief executive officer, and sole manager of Debtors Galileo Learning, LLC ("Galileo") and Galileo Learning Franchising LLC ("Franchising" and, together with Galileo, the "Debtors"). I am very familiar with the Debtors' history, structure, business, day-to-day operations, and financial affairs.

3.    I have served as the Debtors' chief executive officer and sole manager since their formation.

_____

[1] The last four digits of the Debtor's federal tax identification number are 9453. The mailing address for the Debtor is 1021 Third Street, Oakland, California 94607.

16515572.1

4.      Except as otherwise indicated, the statements that I make in this Declaration are based upon (a) my personal knowledge of the Debtors' history, structure, business, day-to-day operations, and financial affairs, (b) information that I have learned from a review of relevant documents and records, and/or (c) information that was supplied to me by other members of the Debtors' management team.

5.      I have been authorized to make and submit this Declaration on behalf of the Debtors.

6.      If I am called to testify in these cases, I could and would testify competently to the matters set forth in this Declaration.

<u>BACKGROUND</u>

7.      Galileo has been in business since the Spring of 2002.  It is a California limited liability company that maintains its home office in Oakland, California.  Franchising was formed in October of 2019.  Its home office, also, is in Oakland, California.

8.      As Trustees of the Glen E. Tripp and Lauren S. Dutton Year 2003 Revocable Trust, UTD November 20, 2003, my wife and I own 88.127% of the membership interests in Galileo.  The other membership interests are owned by a number of different members.

9.      Galileo is the sole member of Franchising.  Franchising is, in effect, a "wholly-owned subsidiary" of Galileo.

10.     Galileo is in the business of operating innovative and educational summer camps for pre-kindergarteners through tenth graders.  In its 18 years of operation, it has invested more than $10 million in the development of more than 2,500 hours of unique curriculum offerings.

11.     Since its inception, Galileo has served, in the aggregate, hundreds of thousands of campers.

12.     In the 18 summers between the summer of 2002 and summer of 2019, Galileo has booked and provided some 523,000 camper weeks.  Moreover, in each of those 18 summers, the number of camper weeks exceeded the prior year's number.

13.     Significantly, Galileo continued to grow through the recession years of 2008 through 2012.  Its camper weeks rose from 20,000 to 32,000 during that period of national economic stagnation.

14.     In 2002, Galileo operated its camp at a single site in Palo Alto, California. In 2019, Galileo operated camps at 72 sites in California and Illinois.

15.     Since its founding, Galileo has set aside a minimum of ten percent (10%) of its camper spots for scholarship recipients.  It awarded more than 10,000 scholarships for the summer of 2019.  Its plan for 2020, now dashed by the COVID pandemic, was to set aside 20% of its camper spots for scholarship recipients.

16.     Since 2012, Galileo has been a Certified B Corporation.

17.     Along the way, Galileo has received many accolades.  It has received more than 30 "Best Camp" awards from various periodicals.  In May 2017, *Forbes* named Galileo one of "America's Top 25 Small Companies."  For 11 straight years, Galileo has been named in the Top 20 Best Places to Work (small business category) by the *San Francisco Business Times*.  The Dean of Stanford University's School of Education recently completed a three-year research project studying Galileo's impact on students' mindsets, finding that the more exposure children have to Galileo, the more persistent they are in the face of failure and the more willing they are to tackle challenging and novel tasks.

18.     Moreover, during these years, it has "partnered" with such prestigious organizations as The Tech Interactive, the California Academy of Sciences, and Teach for America.

<u>EVENTS LEADING TO THE COMMENCEMENT OF THESE CASES</u>

19.     In September of 2019, Galileo began preparing for an expected 2020 enrollment of 45,000 children, covering approximately 89,000 "camper weeks" (on average, two weeks per child) on 70 campuses located in three states -- California, Illinois, and Colorado.

20.     In April of this year, due to the previously unimaginable onset of the COVID

16515572.1

pandemic, everything stopped. The uncertain duration of the pandemic and government-issued "shelter-in-place" orders, and the need of its customer families to plan to make reliable arrangements for Summer child care, effectively compelled Galileo to cancel all of this Summer's programs. By then, some 10,585 families (the "Customer/Creditors") had paid, in the aggregate, approximately $11,636,780 ("2020 Camp Revenue") in "tuition" for this Summer's programs. The 2020 Camp Revenue figure represents about one-third of the expected 2020 revenue for which Galileo had been planning. Customarily, two-thirds of Galileo's revenue comes in between March and July of each year.

21. For Galileo and its customers, the COVID pandemic could not have been more badly timed. Regrettably, at the time of cancellation of the 2020 camp season, in accordance with its customary and time-proven business plan, Galileo had spent a large percentage of the collected tuition on wages for approximately 140 employees, rent for two offices and a large, 32,000 square foot warehouse, educational supplies and equipment, and other items that would be distributed to campers or otherwise used during the anticipated Summer programs. As a result of the truncated business season and, in particular, the timing of the arrival of the COVID pandemic, Galileo could not provide full refunds to its Customer/Creditors. Indeed, the payment of even large-percentage, partial refunds to Customer/Creditors would have driven Galileo out of business.

22. On April 23, 2020, in the United States District Court for the Northern District of California, one of the Customer/Creditors filed a class action lawsuit ("Class Action"), designated Case Number 3:20-cv-02807-JCS, against Galileo, Franchising, and me, seeking alleged damages of $20,000,000. I understand that the current deadline for answering or otherwise pleading to the Complaint filed in the Class Action is May 19, 2020.

23. I understand also that a number of complaints by Customer/Creditors have been lodged with the offices of the Attorneys General of the States of California and

DECLARATION OF GLENN E. TRIPP IN SUPPORT OF "FIRST DAY MOTIONS"

Illinois.

FIRST DAY MOTIONS

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS
AUTHORIZING USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE
PROTECTION; (C) SCHEDULING A FINAL HEARING PURSUANT
TO BANKRUPTCY RULE 4001(b); AND (D) GRANTING RELATED RELIEF**

24. On or about April 21, 2020, Galileo obtained a $500,000 "Secured Disaster Loan" ("SDL") from the United States Small Business Administration ("SBA"). The loan bears an annual interest rate of 3.75% and is payable in three hundred forty-eight (348) equal monthly installments of principal and interest to be paid over a thirty (30) year period, with payments to commence one year from the date of the Promissory Note, on April 21, 2021.

25. The SDL is secured under a "Security Agreement," which provides for a pledge of, among other described collateral, "… all tangible and intangible personal property ("Collateral"), including, but not limited to: … (h) deposit accounts…"

26. To date, to the best of Galileo's knowledge, after due and proper inquiry and investigation on the part of Galileo (including two UCC searches), the SBA has taken no steps to perfect its security interest in the Debtor's deposit accounts. The SBA has not requested that Galileo or its bank, the California Bank of Commerce, enter into a deposit account control agreement ("DACA"). Moreover, the SBA has filed no Uniform Commercial Code financing statements for the purpose of perfecting its security interest.

27. Galileo currently holds the aggregate amount of approximately $6,244,000 in its various deposit accounts, including certain restricted funds obtained through an April 13, 2020, $2,539,805 Paycheck Protection Plan loan ("PPP Loan") administered by the SBA and implemented through the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). The PPP Loan, which was funded by the California Bank of Commerce, is unsecured and, if certain conditions are met, wholly or partially forgivable.

28. After consultation with those members of my management team who are charged with the primary responsibility for managing cash and making financial

DECLARATION OF GLENN E. TRIPP IN SUPPORT OF "FIRST DAY MOTIONS"

5

projections, I believe that it is highly unlikely that Galileo's aggregate cash deposit account balances will drop below the $500,000 level within the next six (6) months.

29.    Moreover, the total value of the SBA's Collateral (if one takes into account "enterprise value" and includes the value of such tangible and intangible assets as cash, accounts receivable, prepaids, inventory, trade secrets, curriculum, and customer lists) is greater than $10,000,000, which provides the SBA with an "equity cushion" of greater than $9,500,000 with respect to its $500,000 loan. In short, the value of the Collateral is at a minimum, fifteen (15) to twenty (20) times greater than the SDL.

30.    If the Debtor is shut down for even a short time because it is denied the use of cash collateral, many of its employees (who depend upon their paychecks to support themselves and their families) will depart, some or all of its proposed bankruptcy professionals will cease working on the case, and the Debtors' reorganization effort will be seriously jeopardized, if not permanently shut down.

31.    The Debtor has a pressing need for the immediate use of Cash Collateral (as defined below) to continue operating as a going concern (including funding its day-to-day operations which includes payroll, vendors, and the costs of this Chapter 11 Case), minimize disruption, rebut any skepticism regarding the Debtor's ability to operate as a going-concern and stabilize business operations in response to this Chapter 11 Case. In the absence of the immediate use of the Cash Collateral, serious and irreparable harm to the Debtor and its estate will occur and impair the Debtor's efforts to reorganize.

**MOTION OF DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING CONTINUED USE OF THE DEBTOR'S EXISTING BANK ACCOUNTS AND BUSINESS FORMS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; AND (III) GRANTING RELATED RELIEF**

32.    I have reviewed the Motion that is referenced immediately above.

33.    The statements of fact that are made therein are true and accurate.

**MOTION OF DEBTOR GALILEO LEARNING, LLC FOR ENTRY OF ORDER APPROVING SETTLEMENT WITH CERTAIN CUSTOMER/CREDITORS**

34.    Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

16515572.1

("FRBP"), Galileo has requested that the Court enter an order approving proposed settlements ("Proposed Settlements" and, with respect to any individual proposed settlement, a "Proposed Settlement") with Customer/Creditors. Under the Proposed Settlements, those Customer/Creditors who choose to do so, may elect to receive one of two benefit packages in exchange for their claims.

35. The two options that would be made available to Customer/Creditors as part of the Proposed Settlements are as follows: **Option 1 (the "110% Credit Option")**. For the next five (5) years, Customer/Creditors may elect to apply a credit equal to one hundred ten percent (110%) of the amount of their prepetition claims to the purchase of (a) any "virtual," "on-line" camp programs (the "Virtual Programs") that Galileo is currently developing and expects to roll out within the next two weeks, or (b) any other Galileo programs, whether such programs are virtual or not. The Virtual Programs that will shortly be offered by Galileo will include not only virtual one-week camps, but one-hour, online, classes led by Galileo instructors. Customer/Creditors that elect this option may transfer the credit to other parties, including relatives and friends. **Option 2 (the "50% Discount Coupon Option")**. Customer/Creditors may elect to receive a five (5) year, fifty percent (50%) off "coupon" for any Galileo product or products, including but not limited to Virtual Programs. This 50%-off coupon may be used by and for any and all siblings within the family.

36. A Customer/Creditor who wishes to avail herself or himself of one of these options must elect to do so within thirty (30) days of receipt of notice of entry of the Order, so that Galileo will know not merely the number and size of the Customer/Creditor class, but the value of outstanding credits and coupons, in developing its plan of reorganization and preparing its disclosure statement.

37. The 110% Credit Option is utterly consistent with Galileo's credit policy. Subject to availability, since the 2019 camp season, Galileo's customers have been afforded, without penalty, the right to trade one product (camp, camp week, or camp site) for another. The only aspect of the first option that is unique or different is the 110%

16515572.1

1   feature.

2       38.     Among the benefits to Customer/Creditors are the following:

3           A.      The Proposed Settlement is utterly voluntary.  No Customer/Creditor

4   is required to avail himself or herself of either option.  She or he may elect instead to file

5   a proof of claim and await the resolution of the chapter 11 process.

6           B.      The Proposed Settlement offers an immediate resolution of the

7   chapter 11 case to Customer/Creditors, many of whom have relatively small claims.

8   Indeed, the claims of Customer/Creditors average about $1,100 per Customer/Creditor.

9           C.      The "virtual," "on-line" camp programs that Galileo is currently

10  developing will be made available within the next two weeks, while shelter-in-place

11  restrictions remain in full force, parents are working (if at all) at home, and parents are

12  desperately seeking to involve their children in productive, educational, and creative

13  activities.

14          D.      Customer/Creditors may use their 110% credits at any time within

15  the next five years, on any products offered by Galileo.  They may allocate those credits

16  among different products.

17          E.      Customer/Creditors that elect the 110% Credit Option may transfer

18  the credit to other parties, including relatives and friends.

19          F.      Customer/Creditors that elect the second option may use the 50%-

20  discount coupon as many times as they like, for as many products as they like, and for as

21  many siblings as they like.

22          G.      The 50% Discount Coupon Option could potentially be worth many

23  times the amount of a Customer/Creditor's prepetition claim.

24      39.     Among the benefits to the Estate are the following:

25          A.      The election by Customer/Creditors to use these credits or discount

26  coupons will reduce the aggregate amount of claims against the Estate, thereby leaving a

27  greater percentage of the Estate for non-electing Customer/Creditors and other creditors

28  of the Estate.

16515572.1

B.     The election by a Customer/Creditor to avail herself or himself of the 110% Credit Option will produce essentially no marginal cost to the Estate.  Galileo will be offering the same products to its customers, at essentially the same cost to Galileo, regardless of the number of Customer/Creditors who elect to avail themselves of those products through the use of credits.

C.     The marginal cost to Galileo of an election by a Customer/Creditor to avail himself or herself of the 50% Discount Coupon Option also will be covered.

D.     The ability of Galileo, at this unprecedented and economically perilous time, to introduce and offer its innovative, new line of products, the Virtual Programs, to customers is likely to foster goodwill and enhance the Galileo brand.

E.     Similarly, while the Proposed Settlements may not restore all of the goodwill that Galileo has lost as a result of its inability to immediately pay cash refunds, Galileo's offering of a 110% credit or 50% discount coupon to Customer/Creditors will help to restore at least some of the goodwill that has been lost during the past two months.

**MOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) PAY PREPETITION WAGES, SALARIES, COMPENSATION, REIMBURSABLE EXPENSES, AND OTHER OBLIGATIONS ON ACCOUNT OF COMPENSATION AND BENEFITS PROGRAMS, (B) CONTINUE COMPENSATION AND BENEFITS, PROGRAMS, (C) PAY INDEPENDENT CONTRACTOR FEES AND COMMISSIONS, AND (III) GRANTING RELATED RELIEF**

40.     I have reviewed the Motion that is referenced immediately above.

41.     The statements of fact that are made therein are true and accurate.

16515572.1

DECLARATION OF GLENN E. TRIPP IN SUPPORT OF "FIRST DAY MOTIONS"

**MOTION OF DEBTOR FOR ENTRY OF AN ORDER (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; (II) APPROVING DEBTOR'S PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES; AND (III) ESTABLISHING PROCEDURES FOR PROVIDING ADEQUATE ASSURANCE AND RESOLVING <ins>OBJECTIONS OF UTILITY PROVIDERS</ins>**

42.    I have reviewed the Motion that is referenced immediately above.

43.    The statements of fact that are made therein are true and accurate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  May 5, 2020

By:  _Glen E. Tripp_____
     Glen E. Tripp
     Chief Executive Officer and Manager

16515572.1
DECLARATION OF GLENN E. TRIPP IN SUPPORT OF "FIRST DAY MOTIONS"